FILED - USDC -NH
2026 MAR 31 AM 10:36

# UNITED STATES DISTRICT COURT FOR THE DISTRICT

# OF

# NEW HAMPSHIRE

**JAGADESH BHIMINENI,**
Plaintiff (Pro Se),

v.

**UNIVERSITY OF NEW HAMPSHIRE;**
**NICHOLAS NOBOA**, Professor,
**MIHAELA SABIN**, Professor,
**RACHEL LACHANCE**, OISS Advisor,
**LISA ENRIGHT**, Assistant Dean of Student Success;
**Michael Decelle,** Dean,
**Michael Jonas,** Academic Advisor
**Elizabeth Chilton,** Provost, and et al,
Defendants.

**CIVIL ACTION NO:** _____

**COMPLAINT FOR TITLE VI CIVIL RIGHTS VIOLATIONS, DENIAL OF DUE PROCESS, BREACH OF CONTRACT, AND HOSTILE EDUCATIONAL ENVIRONMENT**

## I. INTRODUCTION

1. Plaintiff Jagadesh Bhimineni, an Indian national and experienced Technical Lead in the IT industry, holds an initial master's degree from India and is a December 2024 graduate of his second master's degree in Cybersecurity Engineering from the University of New Hampshire. He brings this civil action against the University of New Hampshire (UNH) and its administrators to seek redress for systemic discrimination and retaliatory career sabotage that persists beyond his graduation.

2. The Defendants subjected the Plaintiff to arbitrary course of placement, systemic national origin discrimination, and a hostile educational environment. Furthermore, Defendants retaliated against Plaintiff's lawful grievances by executing secretive hiring practices to deny him employment and by initiating fabricated, unverified criminal charges. The Defendants also engaged in Advisory Coercion, weaponizing the Plaintiff's F-1 visa status to trap him in an abusive environment while intentionally concealing federal remedies.

## II. PARTIES

3. Plaintiff Jagadesh Bhimineni is an adult resident of Dallas County, Texas, and was an enrolled F-1 international graduate student at UNH during the events in question.

4. Defendant **University of New Hampshire (UNH)** is a public institution of higher education receiving federal financial assistance.

5. Defendant **Nicholas Noboa** was a Professor at UNH who subjected the Plaintiff to disparate grading and a hostile classroom environment.

6. Defendant **Nicholas Noboa**, a Professor at UNH, subjected Plaintiff to disparate academic treatment by delaying the grading of Plaintiff's assignments for approximately eleven (11) weeks while continuing to provide timely grading and feedback to similarly situated students. Defendant Noboa also responded dismissively to Plaintiff's academic inquiries, discouraging Plaintiff from seeking necessary clarification and contributing to a hostile learning environment

7. Defendant **Professor Mihaela Sabin** is an academic supervisor at UNH who exhibited deliberate indifference to the discrimination committed by her junior subordinate, and who subsequently engaged in secretive, retaliatory hiring practices against the Plaintiff.

8. Defendant **Michael Jonas** is an Academic Advisor responsible for the arbitrary curriculum placement of the Plaintiff.

9. Defendant **Rachel LaChance** is an OISS Advisor at UNH who unlawfully weaponized the Plaintiff's F-1 visa status.

10. Defendant **Lisa Enright** is the Assistant Dean of Student Success who oversaw the fabricated conduct charges against the Plaintiff.

11. Defendant **Michael Decelle** is the Dean of UNH Manchester, sued in his official and individual capacities. Despite receiving actual notice of racial discrimination and a fabricated conduct of charge, Defendant Decelle exhibited deliberate indifference by failing to initiate a formal Title VI inquiry. His decision to bypass mandatory grievance procedures effectively ratified the hostile environment and shielded subordinates from accountability

12. Defendant **Elizabeth Chilton**, Provost and Executive Vice President, is sued in her official and individual capacities for deliberate indifference after receiving actual notice of constitutional violations on February 23, 2026

## III. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1343 (Civil Rights), as these claims arise under 42 U.S.C. § 2000d (Title VI of the Civil Rights Act of 1964) and 42 U.S.C. § 1983 (14th Amendment Due Process).

13. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

14. This Court has supplemental jurisdiction over the state-law Breach of Contract and Emotional Distress claims pursuant to 28 U.S.C. § 1367, as they form part of the same case or controversy.

15. Venue is proper in the District of New Hampshire under 28 U.S.C. § 1391(b), as the Defendants reside in this district and a substantial part of the events giving rise to these claims occurred here.

# IV. STATEMENT OF FACTS

## A. Arbitrary Placement and Hostile Classroom Environment

16. Plaintiff entered the program as a second master's student, holding an initial master's degree from India and extensive professional experience as a Senior-level Software Engineer and Integration Lead for a multinational company. Despite this advanced academic and professional background, Defendant Jonas and the administration arbitrarily forced Plaintiff into COMP 841 an introductory course entirely absent from the approved Cybersecurity curriculum without conducting any objective technical assessment.

17. Within COMP 841, Plaintiff was subjected to a hostile environment. During classroom interactions, instructional staff made dismissive remarks in response to Plaintiff's requests for clarification, including statements indicating that students were expected to independently determine missing instructions (e.g., stating, "you are not kids to teach everything"). These comments were made in a manner that discouraged Plaintiff from seeking necessary academic guidance.

18. On Sep 25, 2023, following the hostility in COMP 841, Plaintiff formally escalated the documented instructional failures to Defendant Mihaela Sabin. Despite her administrative duty to fairly investigate, Defendant Sabin summarily shielded the instructor without a factual review. Furthermore, on Oct 5, 2023, Defendant Sabin disparaged the Plaintiff's technical knowledge and professional expertise, questioning his competence rather than addressing the documented lack of materials an act of deliberate indifference that effectively ratified the hostile environment.

## B. Retaliatory and Disparate Grading (Title VI)

19. Immediately following Plaintiff's formal report of missing instructions and hostile classroom conduct to university officials on October 05, 2023, Defendant Noboa ceased providing timely grading and feedback to the Plaintiff. While continuing to provide real-time grading and feedback to other students, Defendant Noboa intentionally withheld Plaintiff's evaluations until December 27, 2023. This targeted 11-week delay was a direct retaliatory response to Plaintiff's protected grievances, intentionally limiting his ability to track academic progress, address technical gaps, or make timely improvements before the conclusion of the term

20. Canvas metadata proves that a similarly situated peer student received grades for Labs 4, 5, 6, 7, and RN5, RN6, RN8 between October 05 and November 7, 2023. In stark contrast, following the Plaintiff's formal report of instructional failures on October 11, 2023, the Plaintiff's identical assignments remained intentionally ungraded, and stopped providing the review until December 27, 2023. This targeted 11-week delay constituted severe retaliatory and differential treatment based on national origin, intentionally depriving the Plaintiff of the ability to track academic progress or succeed within the course

## C. F-1 Visa Coercion and Concealment of Federal Law

21. Visa Weaponization and Coercion: On October 10, 2023, Plaintiff sought to drop or swap COMP 841 due to severe mental distress caused by improper placement and a hostile environment. In

response, Defendant LaChance denied the request and explicitly threatened a "violation of your visa status," intentionally concealing the federal Reduced Course Load (RCL) exception for "Improper Course Level Placement" under 8 CFR § 214.2(f)(6)(iii). This act of Advisory Coercion was designed to trap the Plaintiff in an abusive educational setting while depriving him of known federal immigration remedies

22. During the Plaintiff's October 10th request, the UNH Registrar's 2023 policy update granted students an absolute right to withdraw for "any reason" between September 30 and October 27. Despite this standing institutional policy, Defendant LaChance suppressed both the University's withdrawal rights and federal RCL remedies to force the Plaintiff's continued participation in the hostile environment. By characterizing a policy-protected withdrawal as a "visa violation," Defendant LaChance utilized a malicious pretext to ensure the Plaintiff's academic and professional marginalization

### D. Breach of Contract: Graduate Assistantship (GAO)

23. On August 16, 2023, the Defendants explicitly instructed the Plaintiff to complete federal I-9 payroll onboarding documentation for a Graduate Assistantship. Under the USCIS Handbook for Employers (M-274), Sections 2.0 and 3.0, it is a direct violation of federal guidelines to request Form I-9 completion before an official offer is extended and accepted.

24. After forcing the Plaintiff to complete a makeup orientation by February 16, 2024, the Defendants unlawfully abandoned the onboarding process, breaching the contract and causing severe financial harm.

### E. Title VI Retaliation: Secretive TA Hiring

25. After the Plaintiff lawfully escalated documented reports of the hostile environment and arbitrary placement to the Grad Deans Office on October 5, 2023, and Chair of Dept Oct 10, 2023, Defendant Sabin initiated a coordinated campaign of retaliation. Specifically, during the hiring cycle for the Spring 2023 semester, occurring between December 2023 and January 2024, Defendant Sabin intentionally bypassed the Plaintiff for CA/TA positions. By abandoning the University's transparent public posting protocols and secretly handpicking a few students, Defendant Sabin effectively blacklisted the highly experienced Plaintiff as direct punishment for his October 5 grievances

### F. Fabricated Code of Conduct Violation as Pretext

26. The retaliation escalated drastically on April 4, 2024, when Defendant Enright targeted the Plaintiff with a fabricated theft and Code of Conduct violation.

27. The Defendants initiated this career ending charge without a valid written complaint, without conducting basic evidence verification, and while completely ignoring the Plaintiff's GPS and photographic alibi proving he was miles off campus at the time. This reckless disregard for due process proves the charge was a malicious pretext designed to illegally terminate the Plaintiff's admission.

### G. Institutional Bias and Double Standards

28. The Defendants' discriminatory intent is cemented by their institutional double standards. While the Plaintiff, an Indian national, was relentlessly prosecuted for a fabricated charge without evidence, the University actively shielded another student demonstrably involved in actual conduct violations, ultimately rewarding and promoting that student with a UNH Honor Award.

29. The discriminatory and retaliatory actions described herein were not isolated occurrences but constituted a persistent, semester-by-semester campaign of targeted harassment spanning three consecutive academic terms. Defendants systematically manufactured and escalated administrative pretexts with the unified objective of constructively excluding the Plaintiff from the Cybersecurity Engineering program to conceal institutional failures. This continuous, pervasive, and objectively offensive pattern of targeting subjected the Plaintiff to a constant state of fear and severe psychological trauma, effectively depriving him of the equal access to educational opportunities guaranteed under Title VI. The cumulative effect of this harassment forced the Plaintiff to exist in a perpetually hostile educational environment, where he was intentionally intimidated and marginalized, resulting in catastrophic damage to his academic standing, professional trajectory, and personal well being

30. The Defendants' reliance on 'campus geography' to justify the GAO revocation is a manifestly pretextual defense designed to mask intentional disparate treatment. By requiring the Plaintiff to complete federal I-9 onboarding and orientation for a position they now claim 'did not exist' at his campus, the Defendants engaged in Fraudulent Inducement. Under Title VI, a single federally funded entity cannot utilize satellite campus status as a 'shield' to recruit Indian nationals into a Separate and Unequal educational environment where they are denied the professional property interests afforded to their peers at the flagship campus.

31. Deprivation of Educational and Research Benefit: The continuous state of fear and severe psychological trauma inflicted by the Defendants' systemic harassment and fabricated charges directly interfered with the Plaintiff's academic focus. Due to the constant administrative interference and 'mental torture,' the Plaintiff was unable to properly focus on high-level cybersecurity concepts or conduct the deep technical research promised by the program. Despite fulfilling technical graduation requirements, the Defendants' actions effectively sabotaged the quality of the Plaintiff's education, depriving him of the research depth and academic environment for which he paid full tuition

## H. Exhaustion of Internal Remedies and Administrative Notice

32. On April 12, 2024, and May 24, 2024, Plaintiff provided written notice to Defendant Michael Decelle regarding unequal treatment, the retaliatory revocation of a Graduate Assistantship (GAO), and a hostile educational environment, etc.

33. Plaintiff challenged the "system error" explanation for the GAO revocation and observed that similarly situated students were allowed to retain comparable opportunities, while Plaintiff was not.

34. On February 26, 2026, Bohdan Zaryckyj summarily dismissed the Plaintiff's claims by citing a non-binding internal 12-month rule. This refusal to investigate documented I-9 fraud and disparate treatment confirms the University's internal procedures are a sham, as internal rules do not supersede the three-year federal statute of limitations for civil rights claims in New Hampshire.

35. The Defendants' assertion that the Plaintiff suffered no injury because he 'completed a degree program' and the 'Theft' charges were eventually withdrawn is a bad-faith mischaracterization of the damage. A degree provides no restitution for the permanent stigmatizing effect of a fabricated

criminal accusation, which remains a disclosable event for high-level security clearances in the Cybersecurity, relevant industry. Furthermore, the withdrawal of these baseless charges on April 15, 2024, did not remedy the retaliatory revocation of the Plaintiff's Graduate Assistantship (GAO) or the significant loss of lifetime earning capacity caused by the Defendants deliberate indifference

## V. CAUSES OF ACTION

### Count I: Title VI of the Civil Rights Act of 1964 (National Origin Discrimination)

36. The Defendants, a federally funded institution, subjected the Plaintiff to disparate treatment, arbitrary course placement, disparate grading, and a hostile educational environment based on his national origin and implemented discriminatory geographic policies that disproportionately impact international students at satellite campuses, creating a 'Separate and Unequal' educational environment in violation of 42 U.S.C. § 2000d.

### Count II: Title VI Retaliation

37. The Defendants took adverse economic and educational actions including secretive TA hiring blacklisting, retaliatory grading delays, and fabricating conduct violations against the Plaintiff as direct retaliation for his protected activity of reporting discrimination to the administration.

### Count III: 14th Amendment Due Process Violation (42 U.S.C. § 1983)

38. The Defendants, acting under color of state law, deprived the Plaintiff of his liberty and property interests by initiating baseless, stigmatizing criminal theft charges without a fair process or evidence of review, resulting in severe defamation and the permanent destruction of the Plaintiff's professional 'Liberty Interest' to seek employment in the Cybersecurity industry, an action that 'shocks the conscience' and violates the core tenets of Fundamental Fairness.

### Count IV: Breach of Contract, Fraudulent Inducement, and Promissory Estoppel

39. The Defendants fraudulently induced the Plaintiff's continued enrollment by demanding federal I-9 onboarding documentation for positions they now claim were non-existent, thereby violating the Plaintiff's Vested Property Interest in contractually promised employment

### Count V: Infliction of Emotional Distress

40. The Defendants' extreme and outrageous conduct, including leveraging the Plaintiff's immigration status and falsely branding him a criminal, caused catastrophic physical and psychological trauma.

## VI. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment against Defendants, jointly and severally, for:

A. Compensatory Damages: In an amount to be proven at trial, including but not limited to, full tuition restitution for the deprivation of the promised educational environment, all travel costs, and the total value of lost GAO wages and tuition waivers denied from Jan 2024, through December 2024.

B. Professional Reputation: Significant damages for the permanent destruction of professional reputation. The University's assertion that the Plaintiff suffered no harm is a bad-faith mischaracterization, a degree provides no restitution for the stigmatizing effect of the April 4, 2024, fabricated criminal charge on a background check in the Cybersecurity industry

C. Emotional Distress: Substantial damages for severe psychological trauma, medical expenses, and the physical toll of systemic harassment and the "Advisory Coercion" exerted on October 10, 2023

D. Punitive Damages: Exemplary and punitive damages against the individual Defendants for their willful, malicious, and bad-faith violations of Plaintiff's constitutional and civil rights throughout the 2023-2024 academic cycles

E. Injunctive Relief: A Judicial Declaration of Innocence regarding Case 2023160102 (April 4–15, 2024) and a permanent injunction barring the University from disclosing any "ghost" records or internal archives of the withdrawn charges to third parties or federal investigators

F. Lost Future Earnings: Substantial damages for the permanent destruction of the Plaintiff's professional reputation and the catastrophic loss of lifetime earning capacity in the Cybersecurity industry caused by the Defendants' bad-faith weaponization of a fabricated criminal record.

G. Other Relief: Any further relief the Court deems just and proper, including reasonable costs of this action

## JURY DEMAND

Plaintiff respectively demands a trial by jury on all issues so triable.

**Respectfully submitted**,

Date: ___MAR-23-2026___

**Jagadesh Bhimineni,** Pro Se
8626 W Valley Ranch Pkwy,
Apt 1079, Irving, TX, 75063.

+1 (603) 674 7555
jagadesh.bhimineni@outlook.com